ALF DUNHAM *v*. THE STATE.

1. THEFT — CHARGE OF THE COURT. — See a state of proof which is held to have made it incumbent on the court below, in the trial of a theft case, to instruct the jury specially on the question whether the accused, in taking the property without the consent of the owner, intended to appropriate the property itself or only a temporary use of it.

2. EVIDENCE. — Trying a charge of theft of a horse, the state proved by the owner that the horse was taken from a hitching post, without his consent, and that, a few days afterwards, a man brought the horse to him, accoutered as when taken. *Held,* that the accused was entitled, as part of the transaction thus mooted by the state, to prove by the same witness the account which the man, when he returned the horse, gave of his possession of it.

3. NEW TRIAL. — See a state of case in which a new trial would have been proper, to enable the accused to obtain testimony the materiality of which, on the question of the felonious intent, was first disclosed by the evidence adduced by the state.

APPEAL from the District Court of Colorado. Tried below before the Hon. E. LEWIS.

G. J. Shaw, owner of the mare alleged to have been stolen, testified for the state that on the night of December 25, 1874, about eight o'clock, his mare was taken, without his consent, from a rack to which he had tied her in the town of Weimar, Colorado County, Texas. Witness' saddle, bridle, and rope were on her, and were taken with her. A day or two afterwards witness procured a warrant for Alf Dunham, who was arrested about a week after the mare was stolen. Witness had offered a reward for his mare, and, two or three days after Dunham's arrest, she was brought to witness by a man who lived on the Sandies, ten or twelve miles south of Weimar, and whose name witness did not remember. When returned, the mare had on her the saddle, bridle, and rope. She was worth about $40.

Sidney Rodgers, for the state, testified that on the night of December 25, 1874, he gave a party at his house, six or seven miles south-east of Weimar, and that, about ten

o'clock the same night, Alf Dunham and one Tom Flagg came to witness' house. They were both riding a single animal, a brown mare, which witness knew as the property of G. J. Shaw. The next morning, Dunham rode the mare off — Flagg remaining at witness'.

Sam Holt, who lived in the same house with Sidney· Rodgers, testified to the same facts as the latter. This was all the evidence offered by the state.

L. M. Dew, for the defense, testified that he, as a constable, arrested Alf Dunham on the warrant charging him with the theft of the mare in question. Witness found the accused at the latter's home, in the adjoining county of Lavaca, and about a mile from the town of Hallettsville, some twenty-two miles south-west of Weimar. The mare was not in the possession of Dunham, when arrested, but she was brought to her owner, a day or two afterwards, by some one who lived on the Sandies.

This was all the evidence in the case. The jury found the accused guilty, and allotted him five years' privilege of the penitentiary.

Accused moved for a new trial, on grounds sufficiently disclosed in the opinion of this court.

*W. T. Delaney*, for the appellant.

*W. B. Dunham*, for the State.

Winkler, J.   It is shown by a bill of exceptions that on the trial below the state introduced as a witness " G. J. Shaw, who stated that he lost his mare on Christmas night, 1874; that she was taken from the rack at Weimar, with his bridle and saddle on; that he offered a reward for his mare, and about a week or more afterwards his mare was brought to him by Mr. ——, with the saddle and bridle on, just as when she left.

" Defendant offered to prove by the same witness that, when

the man brought home the mare, he stated to witness that he had found the mare, with the bridle and saddle on, loose on the prairie in Colorado County, near the Sandies, and, hearing of witness' reward, had brought the mare to him ; but the court, on objection of the county attorney, refused to admit the testimony ; to which ruling the defendant excepts."

After conviction the accused moved the court to grant him a new trial, and, among other grounds for the motion, alleges the following : " The court erred in rejecting evidence as shown by defendant's bill of exceptions," and the following " newly-discovered evidence, to wit : Defendant expects to prove by Mathias Ehweiner, a citizen of Colorado County, that within a very few days, not more than four or five, after the mare with the theft of which this defendant stands charged was missing at Weimar, said witness found said mare in Colorado County, about nine or ten miles south of Weimar, running loose on the prairie ; that, when found by the witness, said mare had the saddle, bridle, and stake-rope on, and that the witness immediately took said mare and delivered her as he found her to G. J. Shaw, at Weimar, who received her as the mare he had lost ; that defendant was not aware of the existence of such evidence until it was developed at the trial, and that defendant was not acquainted with said Ehweiner."

This statement is verified by the affidavit of the accused, and supported by the affidavit of the witness by whom it is alleged the proof is expected to be made. Two other grounds are set out in the motion for a new trial. One calls in question the correctness of the charge of the court, and the other the sufficiency of the evidence. The motion was overruled, and the following errors are assigned :

" 1. The court erred in excluding the evidence offered by the defendant, as shown by his bill of exceptions.

" 2. The court erred in overruling defendant's motion for a new trial."

We are of opinion that the whole evidence as set out in the transcript rendered it necessary for the court to have instructed the jury specially as to the intent of the accused in his connection with the animal charged to have been stolen, in order to justify a conviction of theft. However culpable his conduct on the occasion, yet he could only be legally convicted of this crime upon the evidence showing, or unless it was of such a character as to impress the minds of the jury with the fact, that the animal was taken with an intent, present at the time of the taking, to deprive the owner of the value of the same, and to appropriate it to the use or benefit of himself.

The charge given being general in its nature, whilst it correctly defines theft as laid down in the Code, yet was not calculated to draw the attention of the jury specially to the question of intent as developed by the evidence. *Berg* v. *The State*, 2 Texas Ct. App. 248 ; *Hamilton* v. *The State*, 2 Texas Ct. App. 494.

The jury should have been instructed that a taking with any other intention which did not include this intent would not constitute the crime of theft. In this respect the charge was objectionable in that it did not clearly give the jury the law applicable to that particular case as developed by the evidence adduced on the trial. It is incumbent on the court in cases of felony to instruct the jury as to every legitimate deduction which the jury may draw from the evidence, and nothing short of this will answer the demands of the law. *Loza* v. *The State*, 1 Texas Ct. App. 488 ; *Lister* v. *The State*, *ante*, p. 17, and cases there cited.

The testimony sought to be drawn from the witness Shaw, set out in the appellant's bill of exceptions, though perhaps not strictly *res gestæ* in the technical sense laid down in the books, and hardly admissible on that ground, yet it was admissible on the ground that the state had the benefit of a part of the evidence concerning the return of the animal

alleged to have been stolen, against the accused, and by a well-established rule of evidence the accused was entitled to the balance.    The statements made by the person who returned the animal, at the time he returned it, were so intimately connected with the return as to be part of the fact of returning it; and we are of opinion that the court erred, to the prejudice of the accused, in excluding the statements made at the time of returning the animal.    If what the party did was competent evidence, what he said at the time, in explanation of the act, was a part of the transaction.

But, be this as it may, after the trial had ended, and the presiding judge, in considering the motion for a new trial, had an opportunity of reviewing the whole case, as well the charges given as the rulings upon the evidence, it would seem that, in view of the hardship and injury done the accused thereby, a new trial should have been granted, among other reasons, to enable the accused to obtain the testimony of the witness Ehweiner as set out in his affidavit appended to the motion for a new trial; not that he had brought himself within the rule governing the granting of new trials on account of newly-discovered evidence, but because of the propriety, if not the necessity, of more fully developing all the evidence accessible, going to show the intent of the accused.    Especially is this so when we find that the evidence is but circumstantial that the accused took the animal, and because of an entire absence of evidence showing that he had retained the animal or secreted it, or made any other permanent disposition of it indicating an intention on his part to permanently deprive the owner of it or to convert it to his own use or benefit.

This court might avail itself of technical grounds, and refuse to reverse either on the ground of the ruling on the evidence or on the motion for a new trial, but for the defect in the charge of the court as above named.    But on this account, and because of the unsatisfactory character of the

evidénce adduced tending to show an intent to permanently appropriate the animal, the judgment ought not to stand as a precedent. The testimony excluded should have been admitted, or a new trial should have been granted, and in either event the evidence should be controlled by a propér charge.

*Reversed and remanded.*